# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:   )
         )   **JUDGE RICHARD L. SPEER**
Charles/Cindy Burge   )
         )   Case No. 07-31169
Debtor(s)   )
         )

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1). At the conclusion of the Hearing, the Court deferred ruling on the matter so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity, and finds, for the reasons now explained, that the Motion of the United States Trustee should be Denied.

## FACTS

On March 30, 2007, the Debtors, Charles and Cindy Burge, filed a joint petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. In their petition, the Debtors set forth assets valued at $103,107.98. Included in this calculation was the Debtors' residence which they valued at $80,000.00. In their petition, the Debtors set forth that it was their intention to surrender this property which was encumbered by a first mortgage in the amount of $118,939.00.

In addition, the Debtors, who listed the nature of their obligations as 'primarily consumer debts,' disclosed in their petition a total of $220,766.83 in unsecured liabilities. A significant portion of these unsecured debts stemmed from deficiencies that arose when the Debtors were divested of their interests in various parcels of real property through foreclosure proceedings. Prior to the foreclosure proceedings, such properties had been leased by the Debtors.

In re Charles/Cindy Burge
Case No. 07-31169

The Debtor, Charles Burge, is 68 years of age. Presently, Mr. Burge has difficulties with his health, having recently suffered a heart attack. At the time of his bankruptcy filing, Mr. Burge received income from two sources: a pension as a retiree from the Ford Motor Company; and SSI. Together, these two sources of income provide Mr. Burge $2,950.81 in net monthly income.

The Debtor, Cindy Burge, is presently employed as a graphic designer. In this capacity, Mrs. Burge receives a net monthly salary of $897.13. When added to her husband's income, the Debtors' net monthly household income totals $3,847.94. Mrs. Burge, however, explained that her income may decline because, in addition to having health problems of her own, she anticipates having to take time off work to care for her husband.

Inclusive of those costs associated with the residence they are surrendering, the Debtors, who have no dependents, listed $3,683.84 in necessary, monthly expenditures. Accordingly, when set against their household income, the Debtors' household budget revealed a monthly surplus of $164.10. However, insofar as it concerns this surplus, the Debtors explained that they anticipated an increased strain on their budget due to additional costs, particularly for medicine, stemming from Mr. Burge's heart attack.

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

Page 2

**In re Charles/Cindy Burge**
**Case No. 07-31169**

The United States Trustee (hereinafter "UST") brings its Motion to Dismiss under § 707(b)(1). This section provides that a court may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be "an abuse." As the movant, the UST carries the overall burden of demonstrating, by at least a preponderance of the evidence, that the Debtors' case should be dismissed. *In re Wright*, 364 B.R. 640, 643 (Bankr. N.D.Ohio 2007).

When determining whether "abuse" exists under § 707(b)(1), two different standards are prescribed. First, in § 707(b)(2) it is provided that, under a 'means test' formula, abuse may be presumed in instances where an ability to pay threshold is exceeded. Second, § 707(b)(3) sets forth that, even if no presumption of abuse arises, a court may still dismiss a case based upon the particular circumstances of the case.

Of these two standards, the Motion of the UST is based solely on § 707(b)(3). This provision provides:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

In seeking to have the Debtors' case dismissed under this provision, the UST focused its arguments entirely on subparagraph (B), the totality of the circumstances, arguing that a dismissal in this matter is appropriate because "the debtors have the ability to repay a percentage of their debts." (Doc. No.

Page 3

In re Charles/Cindy Burge
Case No. 07-31169

10, at pg. 3). In opposition, the Debtors maintain that they are barely able to keep up with their basic living expenses.

Section 707(b)(3)(A) was added to the Bankruptcy Code in 2005 by the Congressional Act known as "BAPCPA."[1] The addition of this provision to the Code, however, did not signal a major departure from past practices. Prior to the implementation of BAPCPA, Chapter 7 cases were dismissed under § 707(b) for abuse – albeit under a more stringent standard for abuse, with the term abuse being modified by the adjective "substantial" – based upon the totality of the circumstances. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). To this end, this Court has held, and it is generally accepted, that § 707(b)(3)(A) is best understood as simply a codification of pre-BAPCPA case law. *In re Wright*, 364 B.R. at 643; *In re Mestemaker*, 359 B.R. 849 (Bankr. N.D.Ohio 2007) (pre-BAPCPA case law is still helpful in determining abuse under § 707(b)(3)).

Under pre-BAPCPA case law, the Sixth Circuit Court of Appeals set forth, in the case of *In re Krohn*, that a dismissal under § 707(b) could be predicated upon a debtor's "want of need." 886 F.2d 123, 126 (6th Cir.1989). The Court in *In re Krohn* then further elaborated that a primary, and potentially dispositive consideration regarding a debtor's 'need' should center on the particular issue raised by the UST: whether the Debtors have the ability to repay their debts out of future earnings. *Id.* Specifically, the Court stated:

> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease.

---

[1] Bankruptcy Abuse Prevention and Consumer Protection Act, effective October 17, 2005. Public Law 109-8, 119 Stat. 23.

Page 4

In re Charles/Cindy Burge
Case No. 07-31169

*Id.* (internal citations omitted).

A frequently utilized measure, when determining whether a debtor has the ability to repay their debts, is to ascertain whether, under a hypothetical Chapter 13 repayment plan, the debtor could repay a meaningful percentage of his or her unsecured debts. *In re Behlke*, 358 F.3d at 434-35; *In re Glenn*, 345 B.R. 831, 836 (Bankr. N.D.Ohio 2006). Such a determination is made by looking to a debtor's 'disposable income' which is the term used by the Bankruptcy Code when determining the amount of income a debtor must pay into a Chapter 13 plan of reorganization. 11 U.S.C. § 1325(b)(1)(B). 'Disposable income' is defined as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2); *In re Pier*, 310 B.R. 347, 353 (Bankr. N.D.Ohio 2004).

According to their amended bankruptcy schedules, the Debtors have a monthly 'disposable income' of $164.10. Assuming then, in a hypothetical Chapter 13 case, that the Debtors would propose a plan of reorganization over five years, this income would afford the Debtors the ability to repay $9,846.00 toward their unsecured debt. While not a negligible amount, given the Debtors' unsecured debt burden which, exclusive of any deficiency arising from the surrender of their residence, stands at $220,766.83, the resulting payout to unsecured creditors would be minimal – $9,846.00 is under 5% of $220,766.83.

However, when computing a debtor's disposable income, a court is not required to accept, at face value, the income and expense figures put forth by the debtor. Rather, in its role as the trier-of-fact, the Court is under a duty to scrutinize a debtor's expenses, and make downward adjustments where necessary, so as to ensure that the debtor's expenses are reasonable. Similarly, when determining a debtor's 'disposable income,' a court may impute income to the debtor when it would be equitable to do so – *e.g.*, when the debtor is voluntarily underemployed. *In re Glenn*, 345 B.R.

Page 5

831, 836 (Bankr. N.D.Ohio 2006). *See also Freeman v. Schulman (In re Freeman)*, 86 F.3d 478, 481 (6th Cir. 1996) (disposable income is to be interpreted broadly).

In this matter, the UST takes the position that the $164.10 disposable income figure put forth by the Debtors is not a true reflection of their actual ability to pay. In doing so, the UST took particular issue with two of those expenses listed by the Debtors in their amended schedule J: (1) a monthly expense of $500.00 for electricity and heating fuel; and (2) another $500.00 monthly expense the Debtors claim for transportation. According to the UST, the $500.00 expense for electricity is excessive when considered in light of the value of their residence, $80,000.00. Similarly, the UST argues that allocating $500.00 for transportation is not necessary when it is considered that only Mrs. Burge is employed and the Debtors have no other dependents. For this transportation expense, the UST also points out that it is exclusive of any debt financing, which has already been accounted for elsewhere in the Debtors' budget, and thus only encompasses operational costs - *e.g.*, expenditures for fuel.

On the points made by UST, the Court agrees that it is not proper for the Debtors to allocate in their budget $500.00 for electricity and heating fuel. The Debtors offered no viable justification concerning their need for such an expense. And under any measure, allocating the sum of $500.00 for electricity and heating fuel is inordinately high for just two individuals whose residence, by all accounts, is of modest size.

The same would also appear to hold true with respect to the Debtors' $500.00 transportation expense. With only Mrs. Burge presently employed, it does not initially strike this Court as reasonable that the Debtors would require such a large allocation for transportation. However, unlike with their large expense for electricity and heating fuel, the Debtors did offer in this instance what this Court views as a viable explanation: Mr. Burge, on account of his heart attack, must make frequent trips to the doctor.

Page 6

**In re Charles/Cindy Burge**
**Case No. 07-31169**

Although not requiring a spartan existence, frugality is required for an expense to be reasonably necessary in the context of an action to dismiss under § 707(b)(3). *In re Marshall*, 181 B.R. 599, 602 fn.3 (Bankr. D. Ala. 1995). It therefore follows that for the two $500.00 expenses against which the UST takes issue, both of which are uncharacteristically high, only the allocation made by the Debtors for their transportation expense will be permitted in full. Unlike with their electricity and heating fuel expense, the Debtors have satisfactorily explained the necessity of the $500.00 transportation expense.

Notwithstanding, it must be assumed that the Debtors, even after surrendering their residence, will still be required to devote some portion of their household income for the payment of electricity and heating fuel. This type of expense, so long as it is reasonable in amount, is allowed as a matter of course. It thus also follows that the Debtors' monthly 'disposable income' will not increase by the full $500.00 the Debtors presently claim for their electricity and heating fuel expense, but instead will increase by a lesser amount – perhaps $200.00 to $300.00 per month.

Even so, the evidence in this case also shows that this savings will, in all likelihood, be offset by other anticipated strains on the Debtors' household budget. For example, it is uncontroverted that Mr. Burge will, on account of his heart attack, face an increase in the costs for his prescriptions. Additionally, whether because of Mr. Burge's health problems or that of her own, serious questions were raised regarding Mrs. Burge's ability to maintain her current level of employment income.

Resultantly, the Debtors' allocation in their household budget of $500.00 per month for electricity and heating fuel, while an excessive amount, is more than counterbalanced by other anticipated, but yet unaccounted for, strains on their household. In the end, therefore, this underlying reality still remains: the Debtors, at best, have only a minimal amount of 'disposable income' to pay a significant amount of unsecured debt.

Page 7

In re Charles/Cindy Burge
Case No. 07-31169

But firmly tipping the balance in the Debtors' favor are a number of indica of good faith. First, there is no evidence that the Debtors engaged in any frivolous spending. Nor is there any indication that the Debtors sought to retain, through the bankruptcy process, luxury items. Additionally, the Debtors' bankruptcy filing appears to have been brought on, at least in part, by events outside their control, primarily Mr. Burge's medical problems. *See, e.g., In re Zaporski*, 366 B.R. 758, 773 (Bankr. D. Mich. 2007) (lack of excessive spending a factor in denying motion to dismiss under § 707(b)); *In re Haar*, 360 B.R. 759, 768 (Bankr. N.D.Ohio 2007) (a debtor who seeks to reaffirm on a high amount of secured debt, especially luxury items, may be subject to an action to dismiss under § 707(b)(3)).

Finally, it is noted that a significant portion of the Debtors' unsecured debt stems not from excessive consumer spending, but rather from deficiencies that arose as the result of foreclosure actions which had been brought on income producing property owned by the Debtors, *i.e.*, rental properties. In this regard, a question exists whether this case is properly subject to a § 707(b) action for dismissal. By its express terms, § 707(b) only applies to a debtor "whose debts are primarily consumer debts." And although the Debtors set forth in their bankruptcy petition that this was the nature of their debts, marking the appropriate box in their petition, income producing property would not appear to fit this mold. Under the Bankruptcy Code, a consumer debt is defined as a "debt incurred by an individual primarily for a personal, family, or household purpose[.]" 11 U.S.C. 101(8).

Based on all these considerations, it is the conclusion of this Court that the Debtors in this matter present the epitome of what was intended by Congress when it provided for Chapter 7 relief; the Debtors appear honest, and, because of events largely outside of their control, are in need of a fresh start. Simply put, by filing a petition under Chapter 7, the Debtors are not attempting to abuse the bankruptcy process, but are rather seeking to take advantage of the underlying function served by a Chapter 7 bankruptcy: to "relieve the honest debtor from the weight of oppressive indebtedness

Page 8

In re Charles/Cindy Burge
Case No. 07-31169

and permit him to start afresh[.]" *Williams v. U.S. Fidelity & Guar. Co.*, 236 U.S. 549, 554-55, 59 L. Ed. 713, 35 S. Ct. 289 (1915). As such, the Court cannot find that, given the totality of the circumstances, the granting of relief in this case would constitute an abuse within the meaning of § 707(b)(3).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the United States Trustee to Dismiss pursuant to 11 U.S.C. § 707(b)(1), be, and is hereby, DENIED.

Dated: 10/3/07

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 9

# CERTIFICATE OF SERVICE

Copies were mailed this 3rd day of October, 2007 to:

Charles Andrew Burge
1223 Second Street
Sandusky, OH 44870

Cindy Lee Burge
1223 Second Street
Sandusky, OH 44870

Sarah A. Nation
3116 Bardshar Rd
Sandusky, OH 44870

Dean Wyman ust03
201 Superior Ave, Suite 441
Cleveland, oh 44114

John N Graham
5151 Monroe St, #245
Toledo, OH 43623

    /s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court